Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
24654 N. Lake Pleasant Pkwy.
Suite 103-467
Peoria, AZ 85383

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Carol Lakin*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

|  |  |
|---|---|
| Carol Lakin,<br><br>        Plaintiff,<br><br>    v.<br><br>The Lincoln National Life Insurance Company; Juul Labs, Inc.; Group Life and Dependent Life Insurance for Employees of Juul Labs, Inc. Plan; Group Long Term Disability Insurance for Employees of Juul Labs, Inc. Plan,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT**<br><br>Count I:  ERISA claim for long-term disability benefits<br><br>Count II: ERISA claim for the reimbursement of premiums paid on two (2) group life insurance policies |

Plaintiff, Carol Lakin (hereinafter referred to as "Ms. Lakin"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.      Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f).  Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. § 1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.     At all times relevant to this action, Ms. Lakin was a resident of Maricopa County, Arizona.

3.     Upon information and belief, Defendant Juul Labs, Inc., a California corporation (hereinafter referred to as the "Company"), sponsored, administered and purchased a group long-term disability policy (hereinafter referred to as the "LTD Policy"), which was issued to the Company in the State of California.

4.     The LTD Policy is fully insured by Defendant, The Lincoln National Life Insurance Company (hereinafter referred to as "Lincoln").

5.     The LTD Policy specifically states it is governed by the laws of the State of California.

6.     As addressed more fully below, the State of California banned discretionary clauses in disability policies effective January 1, 2012 – 5 years *before* Lincoln issued the LTD Policy to the Company.

7.     Given the State of California's ban on the LTD Policy's discretionary language, the standard of review for the Court to apply in this case is *de novo.*

8.     The specific Lincoln group LTD Policy is known as Group Policy No. 000010235304 (*See* Exhibit "A").  The Company's purpose in purchasing the LTD Policy was to provide long-term disability ("LTD") insurance and income protection for its employees.

9.     Upon information and belief, the LTD Policy may have been included in and part of an employee benefit plan, specifically named the Group Long Term Disability Insurance for Employees of Juul Labs, Inc. Plan (hereinafter referred to as the "LTD Plan").

The LTD Plan may have been created to provide the Company's employees with welfare benefits.

10.     In addition, through two (2) group life insurance policies (hereinafter collectively referred to as the "Life Policies"), which were also issued to the Company in the State of California and fully insured by Lincoln, Ms. Lakin was afforded life insurance coverage for herself and her family/dependents, and these Policies contain Extension of Death benefits/features (hereinafter referred to as the "Life Insurance Waiver of Premium benefit") which waive any premiums due on the Policies if Ms. Lakin was found to meet the definition of "Totally Disabled," as is more specifically pled *infra.*

11.     The specific Lincoln Life Policies are known as Group Policy No. 00001023530300000 and Group Policy No. 00040000100023238 (*See* Exhibit "B"). The Company's purpose in purchasing the Life Policies was to provide life insurance coverage and welfare benefits for its employees.

12.     LTD Policy No. 000010235304 and Life Policy Nos. 00001023530300000 and 00040000100023238, may at times hereinafter be referred to collectively as the "Policies."

13.     Upon information and belief, the Life Policies may have been included in and part of an employee benefit plan, specifically named the Group Life and Dependent Life Insurance for Employees of Juul Labs, Inc. Plan (hereinafter referred to as the "Life Plan"). The Life Plan may have been created to provide the Company's employees with welfare benefits.

14.     The LTD Plan and the Life Plan may at times hereinafter be referred to collectively as the "Plans."

15.     At all times relevant hereto, the LTD Plan constituted an ERISA "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

16.     At all times relevant hereto, the Life Plan constituted an ERISA "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

17.     Upon information and belief, Lincoln functioned as the claim administrator (decision maker) of the Plans and Policies.

18.     Pursuant to the relevant ERISA regulation, the Company and/or Plans may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Lincoln.

19.     Lincoln operated under a structural financial conflict of interest because it fully insured the LTD and Life Policies and also administered Ms. Lakin's claims for LTD and Life Insurance Waiver of Premium ("LWOP") benefits.

20.     In administering Ms. Lakin's LTD claim, Lincoln operated under dual and conflicting roles as the decision maker with regard to whether Ms. Lakin was disabled, and also as the payor of LTD benefits if it found she was disabled pursuant to the definition of disability as set forth in the LTD Policy.

21.     Lincoln's financial conflict of interest existed and manifested because if it found Ms. Lakin was disabled, it was then financially liable to pay her LTD benefits.

22.     In administering Ms. Lakin's LWOP claims, Lincoln operated under dual and conflicting roles as the decision maker with regard to whether Ms. Lakin was disabled, and also as the provider/payor of life insurance benefits if it found she was disabled pursuant to the definition of disability as set forth in the Life Policies.

23.     Lincoln's financial conflict of interest existed and manifested because if it found Ms. Lakin was disabled, it was then financially liable to provide life insurance coverage for Ms. Lakin and her family/dependents and to also pay for any claims made, while waiving any premiums due on the Life Policies.

24.     The Company, Lincoln, the LTD Plan and the Life Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

25.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*General Allegations of Common Claims*

26.     Incident to her employment, Ms. Lakin was a covered employee pursuant to the Plans, and the relevant Policies, and a "participant" as defined in 29 U.S.C. § 1002(7).

27.     In this action, Ms. Lakin seeks LTD benefits from the LTD Plan and the relevant LTD Policy pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

28.     In this action, Ms. Lakin also seeks the reimbursement of all life insurance premiums paid by her for life insurance coverage due to Lincoln's denial of her claims for LWOP benefits, pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).

29.     In this action, Ms. Lakin also seeks any other employee benefits she may be entitled to from the LTD Plan and/or Life Plan and/or from the Company as a result of being found disabled in this action.

30.     After being a loyal employee and working for the Company in the occupation of a Personnel Recruiter, Ms. Lakin became disabled from working in that occupation and disabled from working in any occupation on or about April 20, 2020.

31.     Due to her disabling medical conditions, Ms. Lakin was disabled from working in any occupation from on or about April 20, 2020 through May 3, 2021, the date she was medically able to return to work.

32.     Following the onset of her disability, Ms. Lakin filed a claim for short-term disability benefits which was administered and approved by Lincoln after it found she met the definition of disability for the maximum duration of time benefits were payable.

33.     Ms. Lakin's short-term disability benefits have been fully paid by Lincoln and those benefits have been exhausted.

34.     Following the exhaustion of her short-term disability benefits, Ms. Lakin then filed a claim for long-term disability benefits under the relevant LTD Policy, which was entirely administered and insured by Lincoln as referenced above.

35.     Lincoln made every decision regarding whether Ms. Lakin met the definition of disability as that term is defined in the relevant LTD Policy.

36.     Upon information and belief, the relevant LTD Policy's definition of disability governing Ms. Lakin's LTD claim is as follows:

Total Disability or Totally Disabled will be defined as follows:

1.  During the Elimination Period and Own Occupation Period, it means as a result of an Injury or Sickness the Insured Employee is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his or her Own Occupation and is not working in his or her Own Occupation.

2.  After the Own Occupation Period, it means that as a result of an Injury or Sickness the Insured Employee is not able to engage with reasonable continuity in any occupation in which the Insured Employee could reasonably be expected to perform satisfactorily in light of the Insured Employee's age, education, training, experience, station in life, and physical and mental capacity…

37.     The LTD Policy's "Own Occupation" Period means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

38.     As referenced above, Ms. Lakin returned to work on May 3, 2021, which was during the Own Occupation timeframe set forth in the LTD Policy.

39.     Ms. Lakin also filed claims for LWOP benefits under the relevant Life Policies, which were also entirely administered and insured by Lincoln as referenced above.

40.     Lincoln made every decision regarding whether Ms. Lakin met the definition of disability as that term is defined in the relevant Life Policies.

41.     Upon information and belief, Life Policy No. 00010235303's definition of disability governing one of Ms. Lakin's LWOP claims is as follows:

Total Disability or Totally Disabled as used in this provision, means:

1. During the first 24 consecutive months, the Insured Person is unable to perform with reasonable continuity the Substantial and Material Duties of his or her Own Job due to sickness or bodily injury; and
2. After 24 consecutive months, the Insured Person, due to sickness or bodily injury, is unable to engage with reasonable continuity in any other job in which he or she could reasonably be expected to perform satisfactorily in light of his or her age, education, training, experience, station in life, or physical and mental capacity.

42.     Upon information and belief, Life Policy No. 00040000100023238's definition of disability governing one of Ms. Lakin's LWOP claims is as follows:

For this benefit, Total Disability:

1. Means you are unable, due to sickness or injury, to perform the material and substantial duties of any employment or occupation for which you are or become qualified by reason of education, training, or experience; and
2. Must continue for at least 180 days.

43.     In support of her LTD and LWOP claims, Ms. Lakin submitted to Lincoln medical and other reliable, compelling evidence which proved her allegation that she met the aforementioned definitions of disability as defined in both the relevant LTD and Life Policies.

44.     In a letter dated August 25, 2020, Lincoln informed Ms. Lakin it was denying her LTD claim/benefits after concluding that, "…the medical documentation contained in your claim file do not support restrictions and/or limitations from your own occupation. Therefore, you do not meet the definition of total disability defined in your policy."

45.     Ms. Lakin alleges that Lincoln's denial of her LTD claim/benefits when ***nothing improved or changed*** with her disabling medical conditions and work limitations after it found she was unable to work in her occupation and paid benefits for the entire STD timeframe (using *essentially the same definition of disability*)(*See* Exhibit "C"), is evidence of its conflict of interest and that this financial conflict influenced and motivated its denial of her LTD claim.

46.     Lincoln's denial of Ms. Lakin's LTD claim was unlawful, illogical and implausible.

47.     Ms. Lakin alleges that Lincoln's denial of her LTD claim/benefits when her LTD claim posed *significantly more financial liability* for Lincoln as compared to her STD claim (STD claim value was much less) is relevant, palpable evidence of its financial conflict of interest at work and a reason which influenced and was a motivating factor for why it denied Ms. Lakin's LTD claim.

48.     Lincoln's denial of Ms. Lakin's LTD claim was motivated by its financial conflict of interest and desire to save money.

49.     Pursuant to 29 U.S.C. § 1133, Ms. Lakin timely appealed Lincoln's August 25, 2020 denial of her LTD claim/benefits on October 2, 2020.

50.     As part of its review of Ms. Lakin's LTD appeal/claim and her LWOP claims, Lincoln required her to undergo an examination with a physician its third-party vendor chose, named Jody Reiser, M.D.

51.     Jody Reiser, M.D. was retained by Lincoln through its third-party vendor named Network Medical Review Co. Ltd. (hereinafter referred to as "NMR").

52.     Ms. Lakin alleges that Dr. Reiser is repeatedly retained by disability insurance companies and their third-party vendors, to perform examinations of individuals who are seeking disability and/or LWOP benefits, such as occurred in Ms. Lakin's claims.

53.     Lincoln and its third-party vendor, NMR's retention of a biased, conflicted and partial Dr. Reiser to perform Ms. Lakin's examination violates its ERISA fiduciary duty (*See* 29 U.S.C. § 1104(a)), which requires it to administer the claim ***"solely"*** in Ms. Lakin's best interests.

54.     Lincoln and NMR's retention of a biased and conflicted Dr. Reiser to perform the examination is inconsistent with the ERISA fiduciary it owes her, and inconsistent with administering the claims ***"solely"*** in her best interests.

55.     Lincoln had a non-delegable ***duty*** pursuant to ERISA and Ninth Circuit law (*See Abatie v. Alta Health Life Ins. Co,* 458 F.3d 955, 968 (9ᵗʰ Cir. 2006))(It is an abuse of

-8-

discretion for an administrator to inadequately investigate a claim), to investigate its business relationship with its third-party vendor, NMR, as well as Dr. Reiser to ensure she was truly "independent" before permitting her to be evaluate Ms. Lakin in her claims.

56.     NMR has a long history of working for the disability insurance industry and its bias and conflicts of interest were scrutinized and criticized many years ago by the Ninth Circuit in *Nolan v. Heald College,* 551 F.3d 1148, 1152 (9th Cir. 2009):

> "According to Network Medical Review's President and Chief Executive Officer, from 2002 through at least 2005, Network Medical Review and MetLife had a "business relationship...whereby MetLife engaged [the] services of [Network Medical Review] to obtain independent medical opinions on the medical conditions of individuals seeking benefits under MetLife disability insurance policies.
>
> …The evidence indicates that MetLife paid Network Medical Review $236,490 in 2002, $569,795 in 2003, $838,265 in 2004, and $1,671,605 in 2005 for these independent medical opinions.
>
> By 2005, 25.62% of Network Medical Review's gross income was attributable to payments from MetLife. Dr. Jares performed 352 medical reviews for MetLife in 2005 and received at least $37,050 for those services. Jares derived 30% of his 2005 income from doing independent medical reviews for Network Medical Review. Dr. Silver performed 98 medical reviews for MetLife in 2005, and roughly 82% of his time was spent performing independent medical reviews for Network Medical Review, for which he was paid $75,945."

57.     Given NMR's long and extensive history of servicing the disability insurance industry as documented 12 years ago in *Nolan*, Lincoln had a non-delegable ***duty*** pursuant to ERISA and Ninth Circuit law (*See Abatie)* to investigate NMR's conflicts of interest, including its own relationship with NMR and NMR's relationship with Dr. Reiser who NMR hired to examine Ms. Lakin.

58.     Before Ms. Lakin attended the examination with Dr. Reiser, Lincoln failed to perform any investigation of NMR or Dr. Reiser's business conflicts of interest to ensure both entities were truly "independent," fair and impartial like Lincoln informed Ms. Lakin they both were.

59.     Ms. Lakin affirmatively states that Dr. Reiser's actual "physical examination" of her lasted a total of ***five (5) minutes.***

60.     In a report dated November 11, 2020, following her superficial examination of Ms. Lakin, and in spite of the evidence supporting her claims, Dr. Reiser opined that as it related to Ms. Lakin's work status, "…she has no clear restrictions or limitations."

61.     Pursuant to 29 C.F.R. § 2560.503-1(h)(3), Lincoln violated ERISA because Dr. Reiser did not possess the medical training and credentials to evaluate and opine on all of Ms. Lakin's disabling medical conditions, or all the work restrictions and limitations which precluded her from performing any work.

62.     Upon information and belief, Ms. Lakin alleges that due to what may be Dr. Reiser's extensive business relationship with NMR specifically, and the disability insurance industry in general, she may be earning a significant annual income from performing the type of examinations she did in Ms. Lakin's claims where she then renders biased opinions that favor NMR and the insurance company who retained NMR.

63.     Upon information and belief, for the reasons referenced herein, due to her long-time, extensive relationship(s) with Lincoln, NMR and/or the disability insurance industry, Dr. Reiser is biased and operated under her own conflicts of interests (i.e. to protect her consulting and business relationships with industry retained third-party vendors such as NMR who retain her).

64.     Dr. Reiser's desire to protect her income and business relationships referenced herein was a motivating factor in why she opined Ms. Lakin's medical conditions did not cause or create any work limitations and she was able to work.

65.     Upon information and belief, Dr. Reiser is and has been for many years, frequently retained by NMR, other third-party vendor, and the disability insurance industry to perform what she, the vendor and insurance company such as Lincoln, allege are "independent" medical examinations.

66.     Dr. Reiser's bias in favor of vendors such as NMR and other insurance companies who hire her, led her to perform a superficial, biased, and outcome-based examination with the end result being her rendering an opinion that favored only Lincoln and was very adverse to Ms. Lakin and led to the denial of her claims.

67.     Dr. Reiser's opinion that Ms. Lakin did not require work limitations (i.e., she was not disabled) was the product of her five (5) minute physical examination, and her selective, one sided, biased review of Ms. Lakin's medical and other evidence that supported her claims.

68.     In her report, Dr. Reiser deliberately and blatantly de-emphasized, selectively reviewed, and impermissibly looked only for certain types of evidence to support her biased opinions, while concurrently rejecting and failing to credit any of Ms. Lakin's reliable and credible evidence which all completely contradicted Dr. Reiser's opinions.

69.     Upon information and belief, due to her conflicts of interest, Dr. Reiser was motivated to protect her consulting relationships with Lincoln, NMR and the disability insurance industry to provide a biased, one sided, medical examination where she renders opinions and authors reports which favor Lincoln, NMR and other disability insurance companies, as exemplified in the adverse opinions she rendered in Ms. Lakin's claims.

70.     Lincoln used Dr. Reiser's opinions as the basis for its unlawful, illogical and unreasonable decision to deny Ms. Lakin's LTD and LWOP claims/benefits.

71.     In a letter dated March 10, 2021, Lincoln informed Ms. Lakin it was denying her LTD claim/benefit after concluding, "the medical documentation contained in your client's claim file does not support Total Disability as defined by the policy."

72.     In a letter dated April 5, 2021, Lincoln informed Ms. Lakin it was also denying her LWOP claims/benefits after concluding, "…you do not have restrictions and limitations that would have precluded you from working in any capacity during your entire six-month elimination period."

73.     Pursuant to 29 U.S.C. § 1133, Ms. Lakin timely appealed Lincoln's March 10, 2021 LTD denial and its April 5, 2021 LWOP denial on October 20, 2021.

74.     In support of her LTD and LWOP claims and appeals, Ms. Lakin submitted to Lincoln a narrative letter dated September 23, 2021 from her treating board-certified cardiologist who confirmed it is her medical opinion, "Regarding whether Ms. Lakin was able to work in her job, I do not believe she could from 04/2020 through at least end of 05/2021..."

75.     Ms. Lakin also submitted to Lincoln a narrative letter dated July 8, 2021 from her treating board certified optometrist who opined, "It remains my opinion that [Ms. Lakin] was completely disabled and not able to work in any job due to her visual limitations alone, from April 20, 2020 through May 3, 2021."

76.     In support of her claims and appeals, Ms. Lakin also submitted to Lincoln a March 22, 2021 evaluation report and Medical Source Statement from a health professional who has been in practice for over 18 years, and who after clinically interviewing and evaluating Ms. Lakin for several hours and reviewing relevant medical records and evidence, opined she had restrictions and limitations which precluded her from working in any occupation during the period of April 20, 2020 through May 3, 2021, the day she was medically able to return to work.

77.     Further supporting her claims, Ms. Lakin submitted a Vocational Assessment (evaluation) dated October 12, 2021 from a certified vocational expert who after personally interviewing Ms. Lakin and reviewing the relevant evidence in her claims, along with the relevant definitions of disability set forth in the LTD and Life Policies, concluded that, "Based on the information I reviewed and my personal interview with Ms. Lakin, her long-term disability benefits should be paid because she meets [Lincoln's] Policy's definition of long-term disability for her occupation…In addition, Ms. Lakin meets the definition of disability for the Extension of Death Benefit as outlined in the [Lincoln] life insurance policy…"

78.     Ms. Lakin also submitted an October 8, 2021 sworn affidavit wherein she confirmed she was unable to work in any occupation throughout the period of April 20, 2020 through May 3, 2021, and provided many detailed reasons to support her allegations.

79.     Ms. Lakin also submitted a July 7, 2021 sworn affidavit from her husband of twelve (12) years, who also confirmed that due to the combination of Ms. Lakin's medical conditions and resulting symptoms, she was unable to work from April 20, 2020 through May 3, 2021.

80.     Ms. Lakin also submitted a June 29, 2021 sworn affidavit from her former supervisor, who also confirmed Ms. Lakin was unable to continue working as of April 20, 2020.

81.     Ms. Lakin also submitted updated medical records from her treating medical professionals which confirmed she remained disabled as the term is defined in the LTD and Life Policies from April 20, 2020 through May 3, 2021.

82.     Ms. Lakin also submitted a list of her current medications, along with the adverse side effects/limitations they created for her and the reasons those side effects precluded her from being able to work in any occupation throughout the time she was disabled and unable to work, April 20, 2020 through May 3, 2021.

83.     All of the reliable evidence Ms. Lakin submitted to Lincoln conclusively and consistently proved she was unable to work in *any occupation* and that she consistently met the definitions of disability set forth in the LTD and Life Policies from April 20, 2020 through May 3, 2021, the day she was medically able to return to work.

84.     In a letter dated October 27, 2021, Ms. Lakin requested for Lincoln to engage her in a "meaningful dialogue" as required by the Ninth Circuit so she could cure any alleged deficiencies Lincoln believed existed, and also so she could perfect her claims as required by *Salomaa v. Honda Long Term Disability Plan*, 637 F.3d 958, 972 (9th Cir. 2011) and *Montour v. Hartford Life & Accident Inc. Co.,* 588 F.3d 623 (9th Cir. 2009).

-13-

85. Lincoln failed to engage in any good faith exchange or dialogue during its review of Ms. Lakin's LTD and LWOP claims/appeals.

86. In a letter dated October 29, 2021 (*See* Exhibit "D"), Lincoln confirmed, "This is to acknowledge receipt of your client's appeal of Long Term Disability benefits and [LWOP] benefits. We received your letter on 10/21/2021…we are in the process of reviewing Ms. Lakin's appeal[s] and we will notify you of the results within 45 days or as soon as a decision has been made."

87. Lincoln was in possession of Ms. Lakin's complete appeal and submission of evidence on October 20, 2021.

88. Ms. Lakin submitted her complete appeal on October 20, 2021 and Lincoln was never waiting for her to submit additional evidence and never asked her to submit any additional evidence during her appeal.

89. Lincoln's first contact regarding Ms. Lakin's claims/appeals occurred ***41-days after she appealed the LTD and LWOP denials and submitted all her aforementioned evidence.***

90. This first contact occurred during a November 30, 2021 telephone call, ***41-days after Ms. Lakin's appeal and submission of evidence***, between undersigned counsel's paralegal, Mrs. Muchmore-Rhoads, and Lincoln's Claims Specialist, Susan McShane, who informed Ms. Muchmore-Rhoads she had been informed ***that same day*** in a review completed by one of Lincoln's nurses that a medical records review by a neurologist was recommended and needed.

91. During this same telephone call, Ms. McShane informed Mrs. Muchmore-Rhoads she was not aware Ms. Lakin returned to work on May 3, 2021, even though this fact was explained in detail in Ms. Lakin's October 20, 2021 appeal letter to Lincoln.

92. In a letter dated November 30, 2021 (*See* Exhibit "D") that followed Mrs. Muchmore-Rhoads and Ms. McShane's telephone call, Lincoln confirmed that, "an extension

of time to process your client's appeal is required and we feel that it would be in your best interest to agree to an additional 45 days extension, to 01/19/2022, or sooner."

93.     In a December 2, 2021 letter (*See* Exhibit "D"), Ms. Lakin responded to Lincoln's letter dated November 30, 2021 by stating, "As [Lincoln] knows, ERISA does not allow your company to unilaterally give itself an extension of time beyond the initial 45-day mandated deadline to render a decision, unless 'special circumstances' warrant the extension. As I explain in this letter, neither [Lincoln's] late review nor the substance of Ms. Lakin's claims provide any 'special circumstances' under federal law to warrant any extension."

94.     In her December 2, 2021 letter, Ms. Lakin also informed Lincoln that, "ERISA mandates that decisions must be made on Ms. Lakin's claims by this Monday, December 6, 2021 and if [Lincoln] does not render a determination in the claims by the close of business on December 6, 2021, she has authorized me to deem her claims exhausted under ERISA and to proceed with filing a civil action in federal court as ERISA gives her the right to do."

95.     In a response letter dated December 6, 2021 (*See* Exhibit "D"), Lincoln then informed Ms. Lakin of a new reason that it needed more time, specifically, "Once opened, the file was of large volume and new medical records to be reviewed…due to these special circumstances, including…the large volume of new records to be reviewed, we are exercising our right to take a 45-day extension of time to decide your client's appeal."

96.     In its December 6, 2021 letter, Lincoln created a new and inconsistent reason for why it needed an extension of time to review Ms. Lakin's claims/appeals to wit, her claims involved "voluminous records."

97.     To the extent Ms. Lakin's claims are documented by voluminous records, Lincoln could have easily learned this fact (along with the neurological its nurse allegedly found during her review) on or soon after October 20, 2021 when Ms. Lakin appealed the denials of her claims and submitted all of her evidence for review.

98.     In a letter dated December 8, 2021 (*See* Exhibit "D"), Ms. Lakin reiterated her position that Lincoln had no right to grant itself an extension, "…at this time [Lincoln] has ***no right*** and is not entitled under federal law and ERISA to take an extension of time to complete its review of Ms. Lakin's claims.  To be clear, for the reasons stated in my December 2, 2021 letter, [Lincoln] provides no 'special circumstance' ERISA and/or federal law recognize that warrant or permits an extension of time."

99.     In her December 8, 2021 letter, Ms. Lakin also advised Lincoln that, "the large volume of new evidence, especially for a closed period claim of approximately thirteen (13) months, clearly documents the serious nature of Ms. Lakin's disabling medical conditions and that a medical records review is not necessary to approve Ms. Lakin's claims."

100.    In her December 8, 2021 letter, Ms. Lakin informed Lincoln that federal law did not find either of Lincoln's reasons to be a "special circumstance" permitting an extension of time and referenced federal law for Lincoln which is directly on point: "In *[Salisbury v. Prudential Ins. Co. of Am.*, 238 F. Supp. 3d 444, 449-50 (S.D.N.Y 2017)] the Court [found that] the simple fact that an insurer must review a large claim file (such as Ms. Lakin's), does not constitute a "special circumstance" warranting an extension of time to render a decision under ERISA. The court found that many disability cases involve the review of voluminous information and evidence; therefore, there is nothing new or novel about an insurance company having to review voluminous records."

101.    Finally, Ms. Lakin informed Lincoln in her December 8, 2021 letter that she would give it additional time, "in an effort to allow [Lincoln] to complete its review and do the right thing by accepting her overwhelming evidence and approving her claims, Ms. Lakin will not file a lawsuit until after Monday, December 13, 2021."

102.    In spite of the *Salisbury* case cited by Ms. Lakin in a letter of December 8, 2021, and the additional time permitted by Ms. Lakin, in a letter dated December 13, 2021 (*See* Exhibit "D"), without citing legal authority or offering a response to *Salisbury's* holding

which directly contradicted Lincoln's illegal and unlawful actions, it informed Ms. Lakin that, "We disagree with you in regard to [Lincoln] taking an extension [of] time…We are exercising our right to take a 45-day extension of time to decide your client's appeal due to the special circumstance listed in the letter, a large volume of new records to be reviewed."

103.    In its December 13, 2021 letter, Lincoln notified Ms. Lakin, "we have requested a peer review from an outside vendor…"

104.    Pursuant to ERISA, any medical records review report obtained by Lincoln after the date Ms. Lakin has deemed her claim exhausted and filed this lawsuit is not part of the Administrative Record (i.e. claim file) in this matter.

105.    As of the date of filing this Complaint, it has been ***55-days*** since Ms. Lakin submitted her LTD and LWOP appeals, and although Ms. Lakin allowed additional time beyond ERISA's mandatory 45-day limit to render a decision in her claims, Lincoln has failed to do so.

106.    Throughout its review of Ms. Lakin's claims, pursuant to federal law, Lincoln failed to show that any "special circumstance" existed under ERISA and federal case law which permits it to take the additional time it needed to complete its review and render a decision.

107.    Lincoln's decision to unilaterally take a 45-day extension even after Ms. Lakin advised it on several occasions that its action was illegal because no "special circumstance" existed under ERISA or federal law permitting it.

108.    Lincoln's actions regarding the extension is a clear and deliberate violation of ERISA and federal law. *See* 29 C.F.R. § 2560.503-1(i)(1)(i), and *Salisbury v. Prudential Ins. Co. of Am.*, 238 F. Supp. 3d 444, 449-50 (S.D.N.Y 2017)(The only rationale for the extension provided in the company's written notice was that Prudential needed additional time "to allow for review of the information in Ms. Salisbury's file which remains under physician and vocational review." But virtually every appeal of the denial of a disability

benefits claim will require "physician and vocational review," and thus this cannot constitute a valid "special circumstance").

109.    Due to Lincoln's failure to render a decision in a timely manner, and failure to provide Ms. Lakin with a "full or fair review" or the reasonable claims process required by ERISA, with the filing of this Complaint, she deems her LTD and LWOP claims exhausted pursuant to 29 C.F.R. § 2560.503-1(i)(1)(i) and (i)(3)(i).

110.    The standard of review for this Court to apply is *de novo* because Lincoln failed to provide Ms. Lakin with a full or fair review, or a reasonable claims process by failing to make any decision in her LTD and LWOP claims/appeals.

111.    With the deeming of her claims exhausted under ERISA and filing this Complaint, Ms. Lakin has exhausted all administrative remedies with Lincoln.

112.    Because Ms. Lakin has exhausted her administrative remedies with Lincoln, her Complaint is properly before this Court pursuant to ERISA, specifically 29 C.F.R. § 2560.503-1(i)(1)(i) and (i)(3)(i). [1]

113.    Pursuant to 29 C.F.R. § 2560.503-1(i)(1)(i) and (i)(3)(i), due to Lincoln's failure to provide a reasonable claims process or a "full and fair review" due to its failure to render a decision in her claims/appeals, ERISA permits Ms. Lakin to bring this civil action.

114.    Pursuant to ERISA, Lincoln owes Ms. Lakin a fiduciary duty to administer her LTD and LWOP claims ***solely*** in her best interests. Lincoln's ERISA violations in failing to render a decision in her LTD and LWOP claims, it failed to act as her fiduciary by failing to provide a reasonable claims process.

115.    Prior to filing this Complaint, Lincoln failed to make a decision in Ms. Lakin's LTD or LWOP claims/appeals, even though the mandatory timeframe for rendering a

---

[1] *See Fessenden v. Reliance Standard Life Ins. Co.,* 927 F.3d 998 (7th Cir. June 25, 2019).

decision ***expired on December 6, 2021*** (45 days from the date it began its review, on October 21, 2021).

116.     The evidence submitted by Ms. Lakin on her appeals clearly proves she met any definition of disability in the LTD and Life Policies from April 20, 2020 through May 3, 2021 (the date she returned to work) and that she was entitled to LTD and LWOP benefits during this period of time. Consequently, Ms. Lakin's claims should be approved.

117.     Lincoln's failure to make any decision in Ms. Lakin's claims/appeals violates the terms of its own LTD and Life Policies which required it to render a decision within forty-five (45) days of the date it began its review (*See* page 14 of the LTD Policy attached as Exhibit "A" to this Complaint and pages 14 and 27 of the Life Policies attached as Exhibit "B").

118.     As a result of not making a decision within the timeframe required by ERISA and Lincoln's own LTD and Life Policies, it violated ERISA's regulations and terms of its own Policies.

119.     Lincoln also had a duty pursuant to ERISA to engage Ms. Lakin in a good faith meaningful dialogue to allow her to participate in Lincoln's review process so she had an opportunity to cure any deficiencies Lincoln believed existed in her claims.  Lincoln failed to engage Ms. Lakin in this dialogue during its review of her claims.

120.     During its review of her claims/appeals, Lincoln either negligently, or intentionally committed numerous ERISA procedural violations as identified herein, even though ERISA's regulations were enacted to protect employee/beneficiary's rights such as Ms. Lakin's.

121.     Lincoln's ERISA violations through all of its reviews include but are not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Ms. Lakin's reliable evidence which proved she met the definitions of disability in the LTD and Life Policies from April 20, 2020 through May 3, 2021 and was entitled to benefits.

122.    If Lincoln properly considered and credited all of Ms. Lakin's overwhelming, reliable and supportive medical and other evidence, it would have timely approved her LTD and LWOP claims/appeals.

123.    In evaluating Ms. Lakin's claims on appeal, Lincoln owed her an ERISA fiduciary duty and had an obligation pursuant to ERISA to administer her claims, "solely in [her] best interests..."

124.    Lincoln's conflict of interest as the decision-maker and provider/payor of LTD and LWOP benefits precluded it from administering Ms. Lakin's claims in her best interests.[2]

125.    Due to its aforementioned conflicts of interest, Lincoln administered Ms. Lakin's claims solely in *Lincoln's best interests* and not in her best interests.

126.    In addition to failing to make any decision pursuant to ERISA, Lincoln failed to adequately investigate the claims, and failed to engage Ms. Lakin in a meaningful dialogue during the appeals of her claims regarding what evidence was necessary to allow her to perfect her claims/appeals so they could be approved.

127.    Lincoln's failure to render a timely decision pursuant to ERISA and failure to properly or fairly investigate the claims and to engage Ms. Lakin in a dialogue, and failure to ask for and/or obtain the evidence it believed was necessary and critical to cure any deficiencies so Ms. Lakin's claims could be approved is particularly egregious given the nature and severity of Ms. Lakin's disabling medical conditions.

---

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

128.    Lincoln's failure to make any decision pursuant to ERISA, and failure to engage Ms. Lakin in a dialogue during its review of her claims is evidence that Lincoln's conflicted and biased review was motivated by its financial conflict of interest as referenced herein.

129.    Ms. Lakin alleges that Lincoln's review was neither "full nor fair" because it violated ERISA, specifically, 29 U.S.C. § 2560.503-1, for many reasons including, but not limited to: failing to make any decision pursuant to ERISA's regulations and the terms of its own policies in Ms. Lakin's claims; failing to credit Ms. Lakin's credible, reliable evidence; by failing to retain a truly independent third party vendor to obtain medical records reviews in Ms. Lakin's claims; by failing to have Ms. Lakin's claims reviewed by truly independent medical professionals; by failing to retain a qualified and unbiased medical professional to conduct an evaluation of Ms. Lakin (Dr. Reiser);; by abdicating and outsourcing its ERISA fiduciary duty when it retained a biased third-party vendor/company (NMR) who in turn retain a biased medical consultant (Dr. Reiser) to examine Ms. Lakin and render opinions in her claims; by abdicating and outsourcing its ERISA fiduciary duty and retaining biased companies and medical professionals to be involved in the review of Ms. Lakin's claims; by failing to fully, properly, fairly, timely and adequately investigate Ms. Lakin's claims; by providing biased and one sided reviews of Ms. Lakin's claims that failed to consider all the evidence she submitted; by de-emphasizing medical and other evidence which supported Ms. Lakin's claims and their approval; by disregarding and/or failing to consider Ms. Lakin's disabling subjective and self-reported complaints/symptoms/limitations; by failing to consider in a singular manner or the combined effect that all of her medical conditions and resulting limitations documented in her medical, vocational, lay-witness and other evidence had on her ability to work in her own and any occupation during the period of April 20, 2020 through May 3, 2021 (when she returned to work); and by failing to engage Ms. Lakin in a meaningful dialogue so she could submit the

necessary evidence to perfect her claims and so she could prove she was disabled as those terms are defined in the LTD and Life Policies from April 20, 2020 through May 3, 2021.

130.    Ms. Lakin alleges a reason Lincoln provided an unlawful and unreasonable review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its financial conflict of interest which manifested due to the dual roles Lincoln undertook as the decision maker and the provider/payor of benefits in her claims.

131.    Lincoln's conflict of interest provided it with a financial incentive to deny Ms. Lakin's LTD and LWOP claims, because every dollar it saved by not paying or providing these benefits now represents profit for Lincoln.

132.    Lincoln's financial conflict of interest manifested when it denied Ms. Lakin's LTD and LWOP claims/benefits and then failed to render a decision in either claim on appeal.

133.    In searching for reasons to deny Ms. Lakin's LWOP claims rather than to approve them, Lincoln saved a *significant amount of money* by not having to to waive premiums on Ms. Lakin's life insurance and not incurring financial exposure to her in the event a potential life insurance claim was filed.

134.    Lincoln's self-serving actions are similar to the conflicted and unlawful review by another insurance company where the Ninth Circuit criticized it by stating, "The plan with a conflict of interests also has a financial incentive to cheat." *Salomaa v. Honda Long Term Disability Plan*, 637 F.3d 958, 970 (9th Cir. 2011).

135.    Ms. Lakin is entitled to discovery regarding Lincoln's aforementioned conflicts of interest, its bias and business relationships referenced herein, as well as the conflicts of interest of any third-party vendor retained by Lincoln (including but not limited to NMR) and any medical professional (including but not limited to Dr. Reiser) retained or identified by Lincoln and/or Lincoln's third-party vendor to review Ms. Lakin's LTD and LWOP claims.

136.    Ms. Lakin is entitled to discovery regarding the conflicts of interest and bias of *any* individual, medical professional or otherwise who reviewed any evidence and/or

participated in the review of her claims and who may have influenced and led to Lincoln's failure to provide a reasonable claims process and to make a decision in Ms. Lakin's claims.

137.    The Court should permit discovery as permitted by Ninth Circuit law so it may properly weigh and consider the nature, extent and effect that *any* conflict of interest and/or any ERISA procedural violation had in influencing Lincoln's decision to deny Ms. Lakin's LTD and LWOP claims and its failure to render a decision in her appeals.

138.    Ms. Lakin is entitled to discovery regarding Lincoln's compliance with the terms of its Policies and the numerous ERISA procedural violations committed by Lincoln during its review of Ms. Lakin's appeals/claims and failure to make a decision in the appeals of her claims.

139.    Ms. Lakin asserts that any third-party vendor retained by Lincoln (including but not limited to NMR), and in turn, any medical professional that vendor hired to review evidence in Ms. Lakin's claims or to evaluate her, operated under a conflict of interest due to their business relationship with Lincoln, their relationship with a third-party vendor such as NMR, and the disability insurance industry in general.

140.    The standard of review for the Court to apply in this matter is *de novo.*

141.    With regard to whether Ms. Lakin's evidence proves she met the relevant definitions of disability in the relevant LTD and/or Life Policies, the standard of review is *de novo*, pursuant to her deeming her claims exhausted pursuant to 29 C.F.R. § 2560.503-1(i)(1)(i) and (i)(3)(i).

142.    The standard of review is *de novo* because even if the Court concludes the LTD and/or Life Policies lawfully confer discretion even though California law does not permit such a finding, due to Lincoln's failure to provide a reasonable claims process and there is no decision in Ms. Lakin's claims/appeals for the Court to defer to. *See Fessenden v. Reliance Standard Life Ins. Co.,* 927 F.3d 998 (7th Cir. June 25, 2019).

143.    The standard of review is *de novo* because the LTD and Life Policies were issued in and have subsequently been renewed in the State of California.

144.    Effective January 1, 2012, the State of California through its Department of Insurance (pursuant to California Insurance Code § 10110.6), banned the discretionary language Lincoln deliberately put in Ms. Lakin's policies (*See* Exhibit "E").

145.    Due to the State of California's ban on discretionary language in insurance policies, any language in the LTD and/or Life Policies purporting to confer discretion on Lincoln, is banned as a matter of public policy, is unlawful and violates California law.

146.    At the time Lincoln placed discretionary language in the relevant policies governing Ms. Lakin's claims, it knew and was fully aware the State of California previously banned and outlawed those clauses.

147.    Lincoln deliberately violated California law by including discretionary language in the above referenced polices because it knew or should have known that ***many years earlier*** this language was illegal and banned by the State of California.

148.    Ms. Lakin alleges Lincoln failed to provide a "full and fair" review as required by ERISA, and that its previous denial of her LTD benefits for the period of April 20, 2020 through May 3, 2021 is *de novo* wrong because her evidence proves she met any definition of disability set forth in the LTD Policy during that period of time.

149.    Ms. Lakin alleges Lincoln failed to provide a "full and fair" review as required by ERISA, and that its previous denial of her LWOP claim/benefits for the period of April 20, 2020 through May 3, 2021 is *de novo* wrong because her evidence proves she met any definition of disability set forth in the Life Policies during that time.

150.    Notwithstanding the State of California's ban on discretionary language, in the event the Court finds the LTD and/or Life Policies lawfully confer discretion on Lincoln, Ms. Lakin asserts the standard of review is *de novo* because Lincoln did not provide a "full and fair" review or a reasonable claims process required by ERISA, and these and other violations committed by Lincoln are so flagrant and egregious they justify *de novo* review under Ninth Circuit law.

151.     Ms. Lakin is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her damages for the losses she has incurred as set forth below in her prayer due to Defendant's denial and nonpayment of her claims and benefits.

## I.     *Count I - Claim for Long-Term Disability Benefits*

95.     All previous paragraphs are incorporated by reference as though fully set forth herein.

96.     The LTD Policy promises that Ms. Lakin is entitled to a portion of her pre-disability earnings at a certain amount if she meets the LTD Policy's "Own Occupation" definition of disability for the first twenty-four (24) months of benefits, and thereafter, if she then meets the LTD Policy's "Any Occupation" definition of disability.

97.     Ms. Lakin submitted evidence to Lincoln which sufficiently proved she met the "Own Occupation" definition of disability set forth in the LTD Policy from April 20, 2020 through the date she returned to work, on May 3, 2021.

98.     As a direct result of Lincoln's denial and failure to render a determination in the final appeal of Ms. Lakin's LTD claim, she has been injured and suffered damages in the form of lost LTD benefits, in addition to other potential non-disability employee benefits she may be entitled to receive through or from the LTD Plan, from any other Company Plan and/or the Company itself (as a result of being found disabled in this matter).

99.     Upon information and belief, Ms. Lakin believes other potential non-disability employee benefits she may be entitled to includes but is not limited to, health insurance (coverage) and other insurance related coverage or benefits, retirement benefits or a pension. Ms. Lakin seeks any and all employee benefits, and/or any other benefits she may be due from Defendants as a result of being found disabled in this matter.

**II.** **_Count II - Claim for the Reimbursement of All Life Insurance Premiums Paid by Ms. Lakin Due to Lincoln's Denial of her LWOP Claims_**

100.     All previous paragraphs are incorporated by reference as though fully set forth herein.

101.     The Life Policies promise that if Ms. Lakin is found to meet the "Total Disability" definition of disability set forth in the Policies, she is then entitled to continued life insurance coverage for herself and her family/dependents which includes the waiver of any premiums due on the Life Policies.

102.     Ms. Lakin submitted evidence to Lincoln that sufficiently proved she met the "Total Disability" definition of disability set forth in the Life Policies during the period of April 20, 2020 through May 3, 2021, the day she was medically able to return to work.

103.     As a direct result of Lincoln's decision to initially deny Ms. Lakin's LWOP claims, she was forced to convert Lincoln's group life insurance coverage to more expensive individual life insurance coverage and was required to pay all premiums due on the individual Life Policies from on or about July 24, 2020 through May 3, 2021.

104.     If Lincoln had lawfully reviewed Ms. Lakin's LWOP claims and found her disabled and entitled to LWOP benefits, she would not have had to convert her life insurance coverage or pay any of the premiums due on the Life Policies.

105.     Because Ms. Lakin met the definition of Totally Disabled set forth in the Life Policies during the period of April 20, 2020 through May 3, 2021, in this matter she seeks the reimbursement of all premiums paid by her on the Life Policies.

106.     Upon information and belief, as a direct result of Lincoln's decision to deny Ms. Lakin's LWOP claims and failure to render a decision on her appeal, she may be entitled to other potential non-disability employee benefits through or from the Life Plan, from any other Company Plan and/or the Company itself.

107.     Upon information and belief, Ms. Lakin alleges other potential non-disability employee benefits may include but not be limited to, health insurance (coverage) and other insurance related coverage or benefits, retirement benefits or a pension.

108.     Ms. Lakin seeks any and all employee benefits, and/or any other benefits she may be due from Defendants as a result of being found disabled in this matter.

WHEREFORE, Ms. Lakin prays for judgment as follows:

A.     For an Order finding the evidence in Ms. Lakin's LWOP claims is sufficient to prove she met the definition of disability set forth in the relevant Life Plan and/or Life Policy, and she is entitled to a refund of all life insurance premiums paid from April 20, 2020 through May 3, 2021, with prejudgment interest thereon;

B.     For an Order finding the evidence in Ms. Lakin's LTD claim is sufficient to prove she met the definition of disability set forth in the relevant LTD Plan and/or LTD Policy, and she is entitled to Long-Term Disability benefits and any other employee benefits she is entitled to as a result of that Order, from April 20, 2020 through May 3, 2021, with prejudgment interest thereon;

C.     In the event the Court is unable for any reason to render a decision as to whether Ms. Lakin is entitled to Long-Term Disability benefits and/or entitled to a refund of all premiums she paid for life insurance coverage from April 20, 2020 through May 3, 2021, she seeks an Order remanding that claim(s) to Lincoln so it can review the claim(s) again and render a determination consistent with the Order issued by the Court;

D.     For an Order awarding Ms. Lakin her attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

E.     For such other and further relief, equitable and otherwise, as the Court deems just, proper, and appropriate.

DATED this 15th day of December, 2021.

SCOTT E. DAVIS. P.C.

By:     /s/ Scott E. Davis
        Scott E. Davis
        Attorney for Plaintiff